RAPPORT

au Président de la République française.

Paris, le 23 décembre 1924.

Monsieur le Président,

L'article 36 de la loi du 31 décembre 1913 sur le classement et la protection des monuments historiques prévoit son extension à l'Algérie et aux colonies par des « règlements d'administration publique, qui détermineront dans quelles conditions et suivant quelles modalités elle y sera appliquée ».

L'Indochine possède un patrimoine d'art et d'archéologie d'une valeur considérable qui s'accroît sans cesse du fait de nouvelles découvertes. La protection de ces richesses est un devoir qui s'impose impérieusement à l'autorité française, non seulement dans les territoires de souveraineté directe, mais également dans ceux de protectorat.

Or, bien que les pouvoirs locaux ne s'en soient jamais désintéressés, en fait cette protection n'a cependant pas été organisée jusqu'à ce jour sur des bases légales avec une pleine efficacité.

Le décret du 3 avril 1920, qui a réorganisé l'Ecole Française d'Extrême-Orient et a doté cet établissement de la personnalité civile, se borne à déclarer qu'elle a dans ses attributions : « d'assurer la conservation des monuments historiques de l'Indochine française » (art. 2), et à charger son directeur de « proposer au Gouverneur général le classement et le déclassement des monuments historiques ainsi que les mesures destinées à en assurer la conservation ; de prescrire et de surveiller l'exécution des travaux de dégagements, réparations, fouilles, etc., et de statuer sur le transfèrement aux musées des pièces détachées » (art. 8).

Ce texte, qui règle en cette matière la compétence et les attributions du directeur de l'Ecole, fait présumer qu'il doit exister, d'autre part, une législation édictant valablement les règles juridiques du classement et les sanctions propres à rendre efficaces les prescriptions relatives à la conservation des monuments. A la vérité, il y a bien un arrêté du Gouverneur général, en date du 9 mars 1900, sur la conservation des monuments et objets ayant un intérêt historique ou artsitique, sur lequel, faute de mieux, l'Ecole Française a pu s'appuyer jusqu'ici pour remplir sa mission. Mais il est avéré depuis longtemps que ce texte ne répond pas d'une manière satisfaisante au but recherché et qu'il est, au demeurant, entaché d'une illégalité flagrante.

Il était donc nécessaire, et d'ailleurs urgent, étant donnée l'importance que commence à prendre en ce pays le tourisme, entraînant comme corollaire un commerce actif des curiosités locales, de reprendre la question sur de nouvelles bases, de manière à aboutir à une réglementation cohérente, générale, de légalité et d'efficacité certaines.

D'une part, M. le Gouverneur général de l'Indochine a prié les Résidents supérieurs, en Annam et au Cambodge, de convaincre les souverains de ces états de l'opportunité que comporte la préservation par l'autorité publique du patrimoine d'art et d'archéologie de leur royaume et d'obtenir d'eux la publication d'ordonnances législatives édictant le principe de la conservation des monuments et objets historiques, et donnant une délégation formelle au Gouvernement du Protectorat et à l'Ecole Française d'Extrême-Orient pour régler, dans tous les détails, la procédure du classement et les moyens propres à assurer la conservation des biens classés. Ces suggestions ont été bien accueillies et les ordonnances royales conformes sont en élaboration. Un règlement local de l'administration de la colonie complètera cette législation particulière.

D'autre part, le projet de décret ci-joint, indispensable pour atteindre les biens régis par la loi française, a été élaboré sur la proposition du Gouverneur général et d'accord avec MM. les Ministres des Beaux-Arts, de la Guerre et de la Marine, et avec le Conseil d'Etat.

Ce projet suit de très près la loi du 31 décembre 1913. Nous sommes en matière française et il n'y avait lieu, en somme, qu'à adapter le texte de cette loi au cadre des institutions locales. Tous les pouvoirs accordés en France au Ministre des Beaux-Arts sont transférés ici au Gouverneur général agissant seul ou en conseil, suivant les cas. L'Ecole Française d'Extrême-Orient conserve les attributions techniques que lui reconnaissait déjà le décret du 3 avril 1920 ; cette institution jouera, en outre, le rôle dévolu dans la Métropole à la commission des monuments historiques, jusqu'à ce qu'il en soit autrement décidé.

Les sanctions pénales ont été calquées sur celles qu'édicte la loi métropolitaine ; celles-ci sont, en effet, suffisantes pour garantir le respect des prescriptions qu'il s'agira de faire appliquer.

D'une façon générale, tous les détails et modalités d'application du nouveau règlement, qui ne peuvent affecter le substratum juridique de la question, ont été réservés à la compétence du Gouverneur général.

J'estime que, dans son ensemble, le texte ci-annexé répond à un besoin évident et urgent de notre colonie d'Extrême-Orient.

J'ai l'honneur de vous proposer de vouloir bien, si vous partagez ma manière de voir, le revêtir de votre signature.

Veuillez agréer, Monsieur le Président, l'hommage de mon profond respect.

*Le Ministre des Colonies,*
DALADIER.

DISCLAIMER: As Member States provide national legislations, hyperlinks and explanatory notes (if any), UNESCO does not guarantee their accuracy, nor their updating on this web site, and is not liable for any incorrect information. COPYRIGHT: All rights reserved. This information may be used only for research, educational, legal and non-commercial purposes, with acknowledgment of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

- 526 -

REPORT

to the President of the French Republic.

Paris, December 23, 1924.

Mr. President,

Article 36 of the law of December 31, 1913 on the classification and protection of historic monuments, plans to extend to Algeria and to the colonies by "public administration regulations which will determine under what conditions and according to what modalities it will be applied there."

Indochina has art and archaeological assets of considerable value that grow continuously because of new discoveries. The protection of this wealth is a duty that imposes itself imperiously to the French authority, not only in the direct sovereignty territories, but also in the protectorate.

Yet, although local powers never were without interest, in fact, this protection was not organized to date on legal bases fully efficiently.

The decree of April 3, 1920, which reorganized the Ecole Française d'Extrême-Orient and gave this establishment civil personality, is limited to declaring that it has the following attributions: "to ensure the conservation of the historic monuments of French Indochina," (art. 2) and asks its director to "propose to the Governor-General the classification and declassification of historic monuments, as well as measures intended to ensure their conservation; to instruct and supervise the execution of release, repair, excavation work, etc. and rule on the transfer of the pieces obtained to the museums" (art. 8).

This text, which settles in this matter the competence and attributions of the director of the School, suggests on the other hand that there must exist a legislation validly stating the legal rules of classification and the sanctions that would make efficient the recommendations concerning the conservation of the monuments. In truth, there is indeed a decree of the Governor-General dated March 9, 1900 on the conservation of monuments and objects with historic or artistic interest, on which, given the lack of something better, the Ecole Française could support itself so far to perform its mission. But it was proven for a longtime that this text does not answer satisfactorily to the purpose sought and that, in fact, it is marred by flagrant illegality.

It was therefore necessary, and in fact urgent, given the importance that starts being taken by tourism in this country, causing as a corollary an active trade with local curiosity, to tackle the matter on new bases, in order to achieve a consistent, general regulation with certain legality and efficiency.

[watermark:] UNESCO Cultural Heritage Laws Database
(Copyright and Disclaimer apply)

DISCLAIMER: As Member States provide national legislations, hyperlinks and explanatory notes (if any), UNESCO does not guarantee their accuracy, nor their updating on this web site, and is not liable for any incorrect information. COPYRIGHT: All rights reserved. This information may be used only for research, educational, legal and non-commercial purposes, with acknowledgment of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

- 527 -

On the one hand, the Governor-General of Indochina asked the Residents Superior in Annam and Cambodia to convince the sovereigns of these states of the opportunity of conservation by the public authority of the artistic and archaeological assets of their kingdom and to obtain from them the publication of legislative orders establishing the principle of conservation of the monuments and historic objects and giving a formal delegation to the Government of the Protectorate and to the Ecole Française d'Extrème-Orient to settle in all details the classification procedure and the means to ensure the conservation of the assets classified. These suggestions were well received, and royal orders are being prepared accordingly. A local regulation of the administration of the colony will complete this particular legislation.

On the other hand, the enclosed draft decree, which is indispensable to cover the goods governed by French law, was prepared at the proposal of the Governor-General and by agreement with Messrs. the Ministers Fine Arts, War and Navy, and with the Council of State.

This project follows very closely the law of December 31, 1913. This is a French regulation, and in short, all we had to do is adapt the text of this law to the local institutions. All powers granted in France to the Ministry of Fine Arts are transferred here to the Governor-General acting alone or in council, as the case may be. The Ecole Française d'Extrème-Orient keeps the technical attributions already recognized to it by the decree of April 3, 1920; in addition, this institution will play the role held in the Metropolis by the commission of historic monuments, until it is decided otherwise.

The criminal sanctions were copied from those established by the metropolitan law; indeed, they are sufficient to guarantee the respect of the instructions that must be applied.

In general, all details and modalities of application of the new regulation, which may not affect the legal substratum of the matter, were reserved for the competence of the Governor-General.

I consider that overall; the enclosed text answers an obvious and urgent need of our Far East colony.

I have the honor of proposing to you to sign it, if you share my view.

Please receive, Mr. President, the homage of my deepest respect.

*Minister of Colonies,*
DALADIER.

[watermark:] UNESCO Cultural Heritage Laws Database
(Copyright and Disclaimer apply)