C4b0sota

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              Plaintiff,

5         v.                              12 CV 2600

6  10TH CENTURY CAMBODIAN
   SANDSTONE SCULPTURE,
7
              Defendant.
8
   ------------------------------x
9                                    New York, N.Y.
                                     April 11, 2012
10                                   11:33 A.M.

11 Before:

12              HON. GEORGE B. DANIELS,

13                                   District Judge

14                      APPEARANCES

15

16 WILMER HALE
        Attorneys for Plaintiff
17 BY:  PETER NEIMAN
        BRIAN MICHAEL
18

19 U.S. DEPARTMENT OF JUSTICE
        Attorneys for Defendant
20 BY:  SHARON COHEN LEVIN
        ALEXANDER WILSON
21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4b0sota

1          (Case called, in open court)

2          THE COURT:  All right.

3          THE CLERK:  United States v. 12 CV 2600.

4          Stand, state your names for the record, starting with

5   the government.

6          MS. LEVIN:  Sharon Cohen Levin from the U.S.

7   Attorney's Office, representing the United States.

8          THE COURT:  Good morning.

9          MR. WILSON:  Alexander Wilson, also representing the

10  United States.

11         MR. NEIMAN:  Good morning, your Honor.

12         Peter Neiman and Brian Michael, representing Sotheby's

13  and its consignor.

14         THE COURT:  Good morning.

15         Ms. Levin, let me start with you.

16         We originally started with I got an application for a

17  warrant of arrest, in rem with regard to this Cambodian

18  Sandstone Sculpture.  Since then, I received some

19  correspondence from Sotheby's who has custody at this point of

20  the statute, basically raising some dispute with regard to the

21  factual scenario here and the law on which both sides are

22  urging the Court to rely upon.

23         I hesitated to grant your warrant of arrest based

24  solely on your application, particularly the complaint and the

25  two-page application in support of the warrant of arrest

C4b0sota

1    because, obviously, once I received the letter, your

2    allegations or statements made in the application don't stand

3    unchallenged.  And so it seems to me I need to know more about

4    the circumstances, what everyone says the circumstances are

5    with regard to the U.S. government's interest, the Cambodian

6    government's interest, Sotheby's interest, and/or any other

7    interest in the statue.  And then determine whether or not I

8    need a full or evidentiary hearing before I can determine

9    whether or not there is sufficient probable cause for the

10   government at this time, on these facts, to seize and take

11   possession of this property.

12        So why don't you first address what you say the status

13   is with regard to all of the interested parties here, and what

14   you say is the appropriate way to proceed to, firstly, resolve

15   this dispute over the statue.

16        MS. LEVIN:  Yes, your Honor, thank you.

17        This is an in rem forfeiture action brought under the

18   forfeiture laws.  It's an action against the property itself,

19   against Sandstone sculpture.

20        When the government initiates an action, it files the

21   act and under Rule G of the Supplemental Rules of Maritime and

22   Admiralty Claims.  It provides a procedure where the Court is

23   required to have, not only subject matter jurisdiction over the

24   action, but in rem jurisdiction.  And Rule G is meant to

25   provide, to enable the Court to obtain in rem jurisdiction over

C4b0sota

1    the property itself.

2            To obtain a warrant under Rule G, there is a bunch

3    of -- there are several different conditions that are set

4    forth.  If the government does not have possession of the

5    property, then the government shall, in an ex parte manner,

6    like obtaining a search warrant or seizure warrant, submit an

7    application to the Court.  And the Court, based upon the facts

8    as alleged in the complaint should determine if there is

9    sufficient probable cause and issue the warrant so the

10   government can take possession of the property and hold it

11   within its possession.

12            It's not meant to be an adversarial proceeding where

13   the ultimate issue of probable cause is determined.  What

14   ultimately is supposed to happen in the case, is a government

15   secures custody of property.  And then, interested parties have

16   an -- the government's required to publish notice which has

17   already begun.  The government has published on the internet

18   and sent notice to Sotheby's, and to Sotheby's counsel, but not

19   to the ultimate consignor, because we do not have information

20   on the consignor's identity or address.  And then parties with

21   an interest in the property, file a verified claim in the

22   court.  And they then become parties to the proceeding.  And

23   then under Rule G, parties that have an interest in the

24   property that have appeared in the action, either within 21

25   days file an answer, or can move to dismiss.

C4b0sota

1          On the motion to dismiss, like any other motion to

2    dismiss, the Court evaluates the complaint at that time, to

3    determine if there is a basis for proceeding with the action.

4          Now, it should be noted that in Rule G, it

5    specifically provides under (g)(2)(F), that the complaint, the

6    forfeiture complaint, need only to allege sufficient fact to

7    support a reasonable belief that the government would be able

8    to meet it burden of proof at trial.

9          So there is no mechanism under forfeiture laws for

10   Sotheby's, who is not a party to this action, to file a letter

11   objecting to the seizure and to be challenging the probable

12   cause that's set forth in the complaint.  They have an

13   opportunity under the forfeiture law to enter an appearance to

14   be a party in the action, and to move to dismiss the complaint.

15   And that's when these issues should be addressed by the Court,

16   based upon the sufficiency of the complaint.

17         If your Honor would like, I am happy to go through the

18   complaint and demonstrate why I believe that the complaint,

19   very, very clearly sets forth probable cause for the seizure

20   and the forfeiture of the Cambodian Sandstone Sculpture.

21         THE COURT:  I mean I understand your argument but,

22   quite frankly, I don't see anything in Rule G that says in the

23   determination of probable cause that I look only at your

24   complaint.

25         MS. LEVIN:  Well, your Honor, there is no other party

C4b0sota

```
 1    to the action in this provision for notice.  I'm happy, if the

 2    Court wants me to address it.  But like anything else, the

 3    complaint, the mechanism, like with the seizure warrant, it is

 4    supposed to be the same standard as the seizure warrant.  If it

 5    was based on an agent affidavit, the Court would evaluate that

 6    affidavit and determine whether it set forth probable cause.

 7    If the government was submitting a seizure warrant under

 8    Rule 41, the magistrate court -- the magistrate judge would not

 9    allow the other party to come in and object and litigate the

10    sufficiency of that affidavit --

11              THE COURT:  But that --

12              MS. LEVIN:  -- the court evaluates it.

13              THE COURT:  Yeah, but I understand your position and,

14    you know, as you say, from the government's position that the

15    Court should simply blindly accept what you say in the

16    complaint, and determine that I have sufficient probable cause.

17    That's not the role of the Court.  It's not to determine

18    whether you're -- if everything you say in the complaint

19    provides probable cause -- if everything you say in the

20    complaint is true, it provides probable cause.  It says that

21    the Court must make a probable cause determination --

22              MS. LEVIN:  Your Honor, I'm happy to --

23              THE COURT:  -- so it doesn't limit the Court in terms

24    of --

25              MS. LEVIN:  Absolutely.
```

C4b0sota

1              THE COURT:  -- how the Court makes a probable cause

2      determination.

3              And obviously, you know, it makes the Court hesitant

4      to simply say I'm supposed to do it because you say do it.

5              If have been receiving at the same time information

6      that says, no, there is no probable cause.  And so, Judge, you

7      shouldn't find probable cause just based on blindly reading the

8      complaint.

9              So it's not a question of who has standing to come in

10     and debate the probable cause.  It is a question of whether or

11     not, given the fact that you say that certain facts exist with

12     regard to how the statue was taken, and what the Cambodian laws

13     are which affect it's disposition, and what Sotheby's has been

14     doing with it, whether or not I'm supposed to simply accept

15     that if Sotheby's says, well, wait a minute, that's not the

16     fact.

17             So I mean, you know, my position is, at this point, is

18     that your -- given the circumstances that have been presented

19     to me, no, your two-page application in conjunction with your

20     complaint, does not, in and of itself, give me a basis to

21     conclude that there is probable cause, you know, to make this

22     seizure.  I need more information to make that determination.

23             MS. LEVIN:  I'm happy to address why I believe that it

24     does do that, but I'm also happy to answer any questions that

25     the Court has as to what it believes is deficient in the

C4b0sota

1    complaint, and provide additional information.

2           THE COURT:  Well, sure.  First of all, I would like to

3    know whether or not -- is there some genuine dispute as to what

4    the Cambodian government's position is with regard to the

5    ownership and/or the disposition of this statue.

6           Sotheby's says there is some dispute about that.  You

7    gave me one set of facts.  They say that they have been in

8    discussions with some Cambodian officials, who, I don't know.

9    And that the actions that they have taken are totally

10   consistent with what the Cambodian government -- how the

11   Cambodian government wanted to proceed.  They also said that

12   they have had discussions with the U.S. Attorney's Office and

13   what they have been doing is totally consistent with their

14   discussions with the U.S. Attorney's Office.  And you give me a

15   set of facts indicating that the statue may be stolen and may

16   have been stolen at a particular time.  They say that those

17   facts are not accurate.  You also give me what you rely upon as

18   a Cambodian wall to indicate that the statue is, in fact,

19   rightfully the property of the Cambodian government.  They say

20   that there is some dispute about that Cambodian right.  You say

21   that this item was illegally imported into this country, but I

22   don't have any specifics for me to conclude that that was

23   necessarily the case.

24          So, you know, I have both factual and legal questions

25   that, at this point, preclude me from issuing a warrant of

C4b0sota

1   arrest, because those questions remain unanswered based on the

2   papers and letters that I have received.  And as long as those

3   questions remain unanswered, that I do not find that, as I say,

4   that your two-page application, plus the complaint, in and of

5   itself, even if I consider the conflicting letters that I have

6   gotten since, that somehow independently establishes probable

7   cause when I need further inquiry about a wall.

8           MS. LEVIN:  Would you like me to respond to your

9   questions?  Now?

10          THE COURT:  If you like.  You could sit down, if you

11  like.  I don't care what you do --

12          MS. LEVIN:  I didn't know if you were raising your

13  questions or --

14          THE COURT:  No, you asked me what my concern was, so

15  you can respond any way you want.

16          MS. LEVIN:  I'll try to respond now.  And if the Court

17  would prefer a follow-up letter, of course I'm happy to do

18  that.

19          With respect to your first question about is the U.S.

20  government acting on behalf of the Cambodian government, or is,

21  as Sotheby's indicated in their letter, that Sotheby's is

22  acting on behalf of the Cambodian government, I can

23  affirmatively tell you, your Honor, that this action was filed

24  at the request of the Cambodian government.  And I can provide

25  you with a letter from the Cambodian ambassador to the United

C4b0sota

1    States making that request.

2            THE COURT:  Okay, let me stop you right there.  The

3    question is not whether or not the action is filed at the their

4    request, the only issue before me now is your application for a

5    warrant of arrest.  That's the only issue.  I am not here to

6    debate the merits of the ultimate disposition of the statue at

7    this point.  The only question that was of great immediate

8    concern to you and Sotheby's was whether the warrant of arrest

9    was something that should be issued.  Nothing in your papers,

10   and nothing that you have said right now indicates to me that

11   the Cambodian government asked the U.S. government to seek a

12   warrant of arrest and take custody, from Sotheby's, of this

13   statue at this point in time.

14           MS. LEVIN:  Your Honor --

15           THE COURT:  Are you representing that that is what

16   they asked you to do?

17           MS. LEVIN:  Yes.  I'm absolutely representing that.

18   And I'm happy to provide your Honor with a letter from the

19   Cambodian Ambassador to the United States making that request

20   or confirming that that is the request that they have made.

21           THE COURT:  Well, that's helpful.

22           MS. LEVIN:  Yes.

23           THE COURT:  That's not information that was previously

24   provided.

25           MS. LEVIN:  I apologize, your Honor.  I will happily

C4b0sota

1     provide that information to you.

2               THE COURT:  Okay.

3               All right.

4               MS. LEVIN:  Second, in terms of whether or not

5     Sotheby's has been working cooperatively with the U.S.

6     Attorney's Office, this matter was under investigation by the

7     office.  And the office has met with Sotheby's on occasion, and

8     met with their counsel.  But this is a forfeiture action that

9     we are bringing.  We do not ask Sotheby's to act on our behalf.

10    Rather we, you know, they are a party that is in possession of

11    property that we contend is stolen property that was illegally

12    imported into the United States.

13              The representations that Sotheby's counsel made in

14    their letter that an Assistant U.S. Attorney that worked for me

15    who is currently on maternity leave, that she promised to give

16    Sotheby's some kind of notice and opportunity to be heard

17    before filing this action, are not true.  She absolutely denies

18    ever making any such representation.  And no one from my office

19    is aware of any such representation.

20              So the fact that Sotheby's was surprised by our filing

21    the action, shouldn't have come as a surprise, because they

22    knew that we were looking into the matter.  And there was no

23    previous, you know, representation that we would not do so

24    without obtaining or notifying the third-party custodian of the

25    property.

C4b0sota

| 1 | THE COURT:  But I assume that the action that the U.S.

2 government took was a surprise to them.

3 MS. LEVIN:  According to them, they are saying it was

4 a surprise.

5 THE COURT:  According to you.  You didn't give them

6 any prior -- in your discussions, you did you give them any

7 prior indication that you were going to, independently without

8 notice to them, seek to move.  And that's really what it comes

9 down to, basically seek to move from where it is stored now, to

10 some storage facility in the U.S. government.

11 MS. LEVIN:  As a part of any forfeiture action that is

12 filed, the routine practice of the U.S. government is, before

13 initiating any forfeiture -- after initiating a forfeiture

14 action, the government either before it or afterwards obtains

15 possession of the property.  It's necessary for the Court to

16 obtain --

17 THE COURT:  That's not my question.  My question is

18 they were clearly not informed that this was the action that

19 you intended --

20 MS. LEVIN:  That's not true, your Honor, the day --

21 THE COURT:  They were informed that you intended to --

22 MS. LEVIN:  The day that we filed the complaint, I

23 called Sotheby's counsel, sent them a copy of the complaint,

24 and told them that we were submitting a warrant for arrest in

25 rem --

C4b0sota

1          THE COURT:  And that was the date you filed the

2     complaint.

3          Any time prior to that, in your discussions, there was

4     no reason for them to believe that you would take such action.

5          MS. LEVIN:  But in any forfeiture action --

6          THE COURT:  I'm not talking about any forfeiture.  I

7     just want to address that first.  I assume that that is

8     correct, that in the discussions that were had, I assume they

9     were cordial and they were professional.  But in those

10    discussions, you did not, either voluntarily or under any other

11    circumstances, tell them something that would give them any

12    indication that this was the course of action that you intended

13    to take.

14         That's all I'm asking.

15         MS. LEVIN:  Actually, that's not quite the case.

16         THE COURT:  Yes or no.

17         MS. LEVIN:  No.  Because we have had numerous actions

18    that we filed where Sotheby's has had possession of property.

19    And in any of these forfeiture actions, the U.S. government

20    either takes possession of the property or asks Sotheby's to be

21    a substitute custodian and hold the property on behalf --

22         THE COURT:  In this case, you never discussed them

23    being a substitute.

24         MS. LEVIN:  No, because the basis of our complaint is

25    the actions that form the basis for the forfeiture, the knowing

C4b0sota

1    importation of stolen or converted property, and the knowing

2    attempt to sell, market, and possession of stolen property,

3    those actions were done by Sotheby's.  We typically ask a party

4    to be a substitute custodian whether they are a neutral third

5    party, that they're not a witness in the action, their actions

6    do not comprise the activity that is the reason for the

7    forfeiture.  I contend Sotheby's is not an independent party

8    here.

9              THE COURT:  Well, I mean, on the one hand, the nature

10   of your accusations with regard to the culpability of Sotheby's

11   is a little inconsistent with the nature of the discussions

12   that you and Sotheby's were having.

13             MS. LEVIN:  Your Honor --

14             THE COURT:  And you -- again, I don't know if I really

15   want to make those determinations.  But, you know, you want me

16   to make some finding, or accept some representation that

17   Sotheby's has knowingly taken action to import stolen property,

18   and to put that stolen property out for sale so that they,

19   therefore, cannot be trusted with the custody of this item --

20             MS. LEVIN:  No, your Honor --

21             THE COURT:  -- even though the item -- you don't think

22   that they -- is it your fear that, where the item is now, that

23   they are somehow going to steal it and run away with it?

24             MS. LEVIN:  No, absolutely not.  I would never

25   suggest, for a second, that I believe Sotheby's would not be in

C4b0sota

1    compliance with your Honor's restraining order.  I absolutely,

2    you know, have no reason to believe that.

3            THE COURT:  What's the urgency of simply moving it

4    from one location to the other, rather than just simply

5    resolving this issue and leaving it where it is and not

6    disturbing it at this point.  Why is it --

7            MS. LEVIN:  Well, your Honor if I can step back.  The

8    normal procedure when the government files -- your Honor if you

9    would just bear with me for one minute --

10           THE COURT:  I -- this is --

11           MS. LEVIN:  No, no, but your Honor --

12           THE COURT:  -- this is not the normal proceeding --

13           MS. LEVIN:  Your Honor, you're asking me --

14           THE COURT:  -- otherwise we wouldn't --

15           MS. LEVIN:  Your Honor, if I could --

16           THE COURT:  -- be standing here.  This is the

17   exception, rather than the rule.

18           MS. LEVIN:  Your Honor, you're asking me for the

19   urgency, if I can just explain, if I could just explain.  I

20   want to just answer that question.

21           THE COURT:  You are not addressing the urgency.

22           MS. LEVIN:  No, no, I'll explain it to you right now.

23           THE COURT:  Explain the urgency of moving from one

24   place to another.

25           MS. LEVIN:  It wasn't that we were arguing that it was

C4b0sota

1    urgent that it be done right now.  The warrant for arrest in

2    rem under Rule G is the normal procedure.

3              THE COURT:  I understand that.

4              MS. LEVIN:  That's what we asked for.

5              THE COURT:  All right, so --

6              MS. LEVIN:  Your Honor, Sotheby's objected.  The

7    government responded to Sotheby's letter.  And your Honor

8    issued a restraining order --

9              THE COURT:  You still have not answered my question.

10   Is there an urgency to move this from one location to the

11   other?

12             MS. LEVIN:  Urgency to move right now?  No, your

13   Honor.

14             THE COURT:  That's the first thing -- I am not here to

15   try to determine, in five minutes, whether or not the Cambodian

16   government should get the return of this statue.  That is the

17   issue for the complaint.  And if there are parties who believe

18   they have some other interests in there, you are absolutely

19   right, there is a standard procedure for them to come in and do

20   that.

21             The only question that I am trying to address, right

22   now, is that the government's position is, you know -- and I

23   assume it's beyond the fact that they're just -- you know, the

24   government's position is not just, well, we asked for a warrant

25   of arrest, and since we asked for it, we should get it.

C4b0sota

         1          I am trying to think more practically about whether or

         2  not, you know, the status quo as it is, you know, why we are

         3  better off changing the status quo until this issue is decided,

         4  and why.  You know, I don't, you know, know a lot about how you

         5  handle precious antiques and precious statues.  I do have an

         6  opinion, in general, that if something is in an appropriate

         7  storage facility that you have no reason to believe that it is

         8  at risk there, you raise the risk of damage or otherwise

         9  something unfortunate occurring by simply moving it from one

        10  good location that it should be in, to another good location

        11  that it should be in.  And you know I want to satisfy myself,

        12  even if we get beyond the probable cause determination, whether

        13  or not it makes sense, why are we -- why are we fighting today

        14  over whether or not it should be in their storage facility or

        15  the government's storage facility while this issue is either

        16  resolved by litigation or resolved by some more amicable

        17  agreement among the parties to do what is appropriate to do

        18  with the statue.

        19          MS. LEVIN:  Your Honor, the government has no

        20  opposition to the Court's restraining order.  At the time that

        21  we went in and asked for our warrant for arrest in rem, as I

        22  said, that is procedure that is recognized in the rules.  And

        23  we have no opposition with the Court entering it.  We have not

        24  objected to it --

        25          THE COURT:  That's what I'm trying to say --

C4b0sota

1          MS. LEVIN:  No, no, no, we have no --

2          THE COURT:  Are you asking me to do something

3    different right now --

4          MS. LEVIN:  Right now?  No, your Honor.

5          THE COURT:  -- in terms of where your application

6    originally was.  And I think it was an appropriate application

7    for a warrant of arrest in rem.

8          In the meantime, when I got Sotheby's letter, I issued

9    an order that I thought -- and intended to be -- temporary

10   until I could see what the government wanted to do.  And I'm

11   just trying to understand for the issue right now, do you want

12   me to change that order, now, and order them to, today, to move

13   this statue from the location that it's in to the location

14   where you want to put it.

15         Is that something that you need or you want to do?

16         MS. LEVIN:  Is there an urgency in it?  No, there is

17   not, your Honor.

18         THE COURT:  Do you want me to do that today?

19         MS. LEVIN:  We would prefer that, but if your Honor

20   believes that a restraining order is sufficient, then the

21   government is perfectly satisfied.

22         THE COURT:  The government knows more about this than

23   I do.  I want to know what you think is appropriate.  I know

24   what you want.  You would rather have it, you know, in your

25   custody, and you would rather do what you usually do.  But I am

C4b0sota

1    trying to figure out if you can give me a good reason to issue

2    a different order, or to sign your order of arrest, instead,

3    today, so that it can be moved from that location to the other

4    location.

5          I know in my order, I specifically ordered that it

6    should not be moved.  And I assume that it is in a location

7    that you believe is an appropriate location to at least protect

8    its integrity, and that you have confidence that Sotheby's is

9    not going to do something with it in violation of this order, I

10   said it shouldn't be moved.

11         MS. LEVIN:  Absolutely.

12         THE COURT:  And I have also said in that order that

13   they should make it available for your inspection.  And I don't

14   know if that has, or hasn't, happened, or and whether you think

15   that that is necessary at this point.

16         MS. LEVIN:  Yes, that is necessary.  And we thank you,

17   your Honor.

18         THE COURT:  And but I'm just trying to just address

19   today, because then I don't have to go through a probable cause

20   determination.  I can say, look, what I'm going to do, is I'm

21   going to set this down and make a determination as quickly as

22   possible as to whether or not this property should be

23   transferred back to the Cambodian government.  And if that is

24   the case, then it will be done.  But, you know, right now, I

25   just want to -- I just want to know whether or not the status

C4b0sota

quo is sufficient in terms of how I have approached it so far
to move forward on that issue without taking any risks that
there would be any damage or destruction of this property and
it would be sufficiently preserved in a safe place, that
everybody's comfortable that it is a safe place to store this
in the meantime.

MS. LEVIN:  Yes, your Honor.  That is sufficient with
the government.

If I may just briefly respond to your issues about
probable cause, because you suggested that you had some
questions about the probable cause as set forth in the
complaint.  And I wanted to address, you know, in a little bit
more detail, the two --

THE COURT:  Sure.

MS. LEVIN:  -- the two questions that Sotheby's raised
about the probable cause.

The first one, being the question of whether or not
the Cambodian laws apply that would determine that this is
stolen property.

There was, at least since 1900, and probably going
back much, much earlier, the statues -- this comes from a
statue from a Temple in Cambodia.  It was a statue fixed to the
ground that was there in Cambodia.  And at least prior to the
colonization by the French, it was the property of Cambodia.
Certainly during the period of French Indochina, there were

C4b0sota

1      very, very clear laws that the property that was contained in

2      the Temples and the monuments belonged to French Indochina.

3      And those were passed on to the Cambodian government when

4      Cambodia became independent from French Indochina.

5              Those laws have always remained in effect.  The issue

6      that Sotheby's raises is that how could they have known about

7      these laws, because these laws were recently rediscovered.  And

8      they cite for that a Unesco data base, and that those laws were

9      not included in the Unesco data base so, therefore, how could

10     anyone have known.  Aside from the point that this is Sotheby's

11     business, the date -- and a search of a single data base

12     shouldn't be sufficient to determine whether or not there is

13     provenance for something.  The Unesco data base contained,

14     right on the front of it, a disclaimer saying that it does not

15     include -- you know, it only includes the current laws and it

16     does not include the earlier laws.  And, specifically, if I can

17     quote from it, the data base contains current cultural heritage

18     laws submitted by Unesco members, states:  It may not contain

19     all earlier legislation and regulations which a country may

20     rely upon to claim ownership by the country of origin of

21     cultural assets -- objects.  Therefore, additional research or

22     contact with the national authority of the source country may

23     be necessary to determine the legal status of the specific

24     objects.

25              So to the extent that Sotheby's is claiming that this

C4b0sota

Unesco data base, their search of it, was sufficient for them
to believe that Cambodia did not have any national ownership
laws is clear from the face of the data base that this can not
provide any support.  And, in fact, this says they need to do
additional research.

Then, with respect to the other suggestion that the
law is not clear, as the Court will see, the laws are very,
very clear and they clearly ownership in Cambodia.  And then,
finally, the argument that we do not know when this property
was looted, and they question the assertion of an expert that
the government included in the complaint who based his
determination that the Duryodhana, the Cambodian statue, was
looted post 1960.

He bases it on four factors.  One, that there was a
publication that described the Kokar Temple and it did not
include any mention of looting in the 1930s.  In the 1930s
there was no looting.  That in photographs taken from the 1950s
and 1960s, didn't indicate any missing statues.  Third, this
Kokar Temple site is in a very remote jungle location.  And
there wasn't a road out there until 1965.  And, finally, and I
think most critical, there is no provenance for this statue
prior to 1975.  It was looted, as Sotheby's suggests, somewhere
in the last thousand years.  Where has it been?  There is no
record of anybody owning it up until 1975.  And provenance for
works of art and cultural property are very, very significant.

C4b0sota

It is a giant red flag that should put somebody on notice.

        But on top of that, Sotheby's, as alleged in our complaint, Sotheby's was informed by its expert that this statue was looted from Prasat Temple at Kokar, and that the feet were still there.  And she warned them not to sell it.

        And, then, as we allege in the complaint, Sotheby's went through elaborate means to not really notify the Cambodian government, at the last minute to send an e-mail in an effort to be able to attempt to sell this property.  And then, only when Cambodian government sent a letter demanding that they stop the sale because it was looted from Prasat Chen Temple at Kokar, in Cambodia, only at that time did Sotheby's stop that sale.  And then, they attempted to -- you know, to try and resolve it.

        But our position is that in the case that there is multiple bases for forfeiture.  But the two most significant ones are that when this statue was imported into the United States by Sotheby's, they knew really two very relevant facts. One, that it came from Kokar Temple in Cambodia.  And, two, that there was no provenance for this statue prior to 1975.

        And if you review the complaint and you see the e-mails from Sotheby's officers, they clearly perceive this as a substantial problem that needs to be resolved in the market. So they had notice that the property was -- that it was stolen or converted property.  Under the National Stolen Property Act,

C4b0sota

1      it is the movement in foreign commerce of stolen property and,

2      also, the movement in foreign commerce of converted property.

3              Conversion simply means the wrongful possession of

4      property, knowing it belongs to another.  And we contend that

5      at least, at the importation stage, Sotheby's knew that

6      Cambodia had a claim of ownership to the property.

7              And then on June 1st of 2010, Sotheby's expert, the

8      expert that they hired to evaluate the statue and write a

9      catalogue, that expert advised them that it was stolen from

10     Prasat Chen.  Yet, they continued to possess it, and to attempt

11     to market it, and to sell it -- to market it and to attempt to

12     sell it, all of which are in violation of numerous forfeiture

13     statutes and make this property forfeitable to the United

14     States, so it can be returned to its true owner, the Kingdom of

15     Cambodia, and the Cambodian people.

16             THE COURT:  Well, before I hear from Sotheby's, let me

17     just say this.

18             First of all, obviously, my first concern is whether

19     or not it made sense to move the statue at this point in time.

20     I think that, given the government's position at this point

21     and, also, the statute does provide for, not just a warrant of

22     arrest of the property based on probable cause, but

23     alternatively a judicial restraining order.  And it indicates

24     that if there is such a judicial restraining order, that

25     warrant of arrest may be unnecessary.

C4b0sota

1          So in this case, if the government is satisfied that

2     the judicial restraining order is appropriate to ensure that

3     until a determination is made with regard to forfeiture, or

4     until further application to the Court, or order by the Court

5     that it restrains Sotheby's in a way that maintains the

6     integrity of the statue and it makes it available to the

7     government for it's inspection at any time, then I think that

8     with regard to the location and preservation of the statue,

9     that it makes sense to continue with the restraining order,

10    rather than debate further about whether or not -- unless there

11    is some substantive argument to make about whether or not there

12    should be a warrant of arrest and move the statue.  So that's

13    what I think is appropriate with regard to the current

14    circumstances and the status quo.

15          Now, I think that what the next step is, is that I

16    should set it down for a forfeiture hearing and give the

17    government an opportunity to submit whatever you want to

18    submit, give any parties, you know, an opportunity to respond.

19    We can do it in the standard way that the government is used

20    to doing forfeiture or we could expedite it if the government

21    believes, and Sotheby's believes, that the expedited process to

22    resolve this issue should be followed.  And the government can

23    either present, by its submission, by affidavit and/or

24    testimony, the sufficient record for an order of forfeiture.

25    And if that record is sufficient for an order of forfeiture,

C4b0sota

1    given the issues that you have raised with regard to the

2    factual scenario and with regard to the Cambodian law, then if

3    the government meets its burden, then we'll get an order

4    immediate -- if you propose an order of forfeiture, the order

5    of forfeiture will be issued.  And then a further order turning

6    over the statue will be appropriate.

7           If it turns out that the government doesn't meet its

8    burden, if either the Cambodian government, Sotheby's, or some

9    other third party, all of which have the opportunity if they

10   wish to oppose forfeiture and say they have a legitimate claim

11   or interest in the property, instead, if any other parties want

12   to be heard, then they could submit in writing what their

13   position is.  And then they can be available for the hearing,

14   and we can determine whether the hearing will be more in

15   substance a hearing with regard to live witnesses or a hearing

16   further with regard to argument based on the affidavits and the

17   papers that are submitted.

18          So let me, first, turn to the government and figure

19   out how you want to proceed in this case.

20          MS. LEVIN:  There is just a few housekeeping matters.

21          Your Honor, this is a civil forfeiture proceeding, so

22   it's little bit different than procedure that you outlined

23   which is very common in our criminal forfeiture cases.

24          Here, what is required under the statute is that

25   anyone who has an interest in it should submit a verified

C4b0sota

1   claim.  And there is a period of time up until June 5th for any

2   party with an interest in the property to file a verified

3   claim.  My --

4              THE COURT:  June 5 is the date?

5              MS. LEVIN:  Is the deadline.

6              THE COURT:  The complaint was filed in April.

7              MS. LEVIN:  On April 4.  And the government began

8   publishing notice on the internet on April 6th.  And it's 30

9   days from -- and we publish for a period of time, and it is 30

10  days from the last date is what took to file claims.

11             As far as I can tell, there probably will be only

12  three parties that have an interest in the action.  It would be

13  potentially Sotheby's, or the consignor, and then the Cambodian

14  government.  But as the U.S. government is acting on behalf of

15  the Cambodian government, the Cambodian government typically

16  does not need to file a claim.  But then what typically happens

17  at that point is 21 days after the claim is filed, the claimant

18  has the right to file an answer or to move to dismiss the

19  complaint.  I don't know if any of the claimants are going to

20  do so, but that's what is recognized under the statue.

21             And, then, after that, there is a period for

22  discovery.  It may very well be that both parties will want to

23  seek discovery here.  It could be an expedited discovery, but

24  there probably will need to be a discovery period.  And then my

25  expectation is is that both parties may also be calling expert

C4b0sota

witnesses.  Because there are issues of Cambodian law here,

there may be issues about, you know, archeologists determining

when the looting occurred, historians.  So there may need to be

a period of expert discovery.  And then, at that point, I think

that probably in all likelihood, the case can be resolved on

summary judgment on the papers, or maybe with a hearing, or

potentially, the Court -- it could be a civil trial if there

are issues of fact.  Or, that the Court could simply -- the

Court may also want to have an evidentiary hearing on the

issues of foreign law, or the other expert testimony.

            So that would be my expectation of how the matter

should proceed.

            THE COURT:  Well I'm willing to at least expedite some

of that process to the extent that the parties who -- the U.S.

government, Cambodian government, and Sotheby's that we all

know have an interest at this point and are already involved.

If you wish to move forward with some discovery prior to

June 5th, in order to expedite things.  If there turns out to

be no other claimants, then we can more quickly resolve this

issue.  If it turns out to be other claimants, then that would

be a different question.

            I'm going to anticipate at this point, that -- and as

I say, I will attempt to resolve this as quickly as the parties

want this resolved.  I don't know whether you want to simply

stay on the standard schedule, or you want to see whether or

C4b0sota

1  not you could at least begin on a earlier schedule than that in

2  terms of the --

3  MS. LEVIN:  The government would very much like to

4  begin immediately, and we're prepared to begin discovery now

5  and can move on an expedited schedule.

6  THE COURT:  Again, just before I get to -- so let me

7  work backward.  I think that we're obviously going to have to

8  wait -- not wait for discovery, but we're going to have to wait

9  and see if there are any other claimants, and we'll need to

10  know that by June 5th.  If there are any other claimants, they

11  get to file their response or objections to the complaint by --

12  you say that would be by the end of the month, by the end of

13  June.

14  You know, I think that it makes sense for me to

15  schedule at least a conference say in the third week of June so

16  we can know if there are other claimants, and we could know

17  whether or not we can anticipate setting it down for some kind

18  of a hearing if -- and what the extent of that hearing is gonna

19  be.  So if I say we set it down for June 21st, at 10:30, then

20  we can see where we are at that point.

21  My suggestion would be this.  That, obviously, the

22  only other party that -- there are two parties that are not

23  here.  And I'm going to assume at this point if the parties

24  that are here either represent their interest or can at least

25  communicate with -- obviously, that is the Cambodian government

C4b0sota

1  and any consignee or person who claims that they have

2  ownership, or presented this to Sotheby's for sale on their

3  behalf.  I assume Sotheby's is in communication with that

4  party.

5          That being said, I would say that it probably makes

6  sense for you to prepare to exchange, to the extent that you

7  can agree to exchange, information and relevant discovery

8  sometime in May, or any time that you think is relevant before

9  that.  But in terms of if you think that depositions or any

10 further formal discovery needs to be done, then I would suggest

11 that you prepare to begin that within the 30 days between

12 June 5th and the fourth of July, so that you can tell me on the

13 21st, you know, how far you have gotten.  And we can decide

14 whether or not within 30, 60 days more has to be done, or

15 whether she should set it down for a hearing or what I can

16 anticipate receiving from the government or any other

17 interested parties with regard to forfeiture and make a

18 decision regarding forfeiture.  And if the circumstances

19 related to any of that change, then let me know and we'll

20 either have an earlier conference, or we'll adjust the schedule

21 or I'll issue some other order.  But I would hope that would be

22 able to present an efficient process to move forward with the

23 government's forfeiture application and to determine that

24 immediately and be prepared to act accordingly after that

25 determination.

C4b0sota

1          So let me hear, to the extent that Sotheby's wishes to

2     be heard further today.

3          MR. NEIMAN:  Just very briefly, your Honor.

4          First, in terms of scheduling.  I'm actually going to

5     be out of the country on the 21st of June.  I wonder if we

6     could pick a date earlier that week?

7          THE COURT:  You'll be out of the country that week

8     or --

9          MR. NEIMAN:  That Thursday and Friday.  If we could do

10    it earlier that week, I could do it.

11         THE COURT:  Nineteenth or 20th.

12         MR. NEIMAN:  Those are both fine, your Honor.

13         THE COURT:  Wednesday, the 20th, at 10:30.

14         MR. NEIMAN:  Obviously not the place to talk about the

15    merits, your Honor.  But since the government went on at some

16    length on its view of the merits, I thought I would give you a

17    little preview of some of the points that I expect you will be

18    hearing from us as we go forward here.

19         First, as I understand the government's view it's that

20    this piece came out of Cambodia after 1960, that Cambodian law,

21    since at least 1900, vested property like this in the hands of

22    the States, and that Sotheby's knew both of those things.  If

23    you look in their complaint, I don't think you will find any

24    evidence of either of those points, i.e. that Sotheby's knew

25    that this statue was in Cambodia in the 1960s, or that

C4b0sota

Sotheby's knew what the Cambodian law was what the government
says it was.  I don't think you'll find any evidence of that in
the complaint, I don't think there is any evidence of that.

Second point, the government makes a lot of this
e-mail from our historian who was not a Sotheby's employee, but
a person hired to write a catalogue description of this piece;
not a lawyer, not an expert in Cambodian law, U.S. law, whether
this would count as stolen property or not.  They make a lot of
what the person said.  What they don't mention however, is that
that person in a subsequent e-mail that they have said that
Sotheby's could legally and ethically happily sell the piece.

So it's a much more complicated story than the story
that the government has put forth for you today.  And, you
know, Sotheby's intends to vigorously dispute this both on its
own behalf and on behalf of its consignor.  And it's our
expectation, at the end, obviously -- not here arguing the
merits today, but Sotheby's view is that it acted in complete
good faith here, and that it expects to be able to demonstrate
that at the end of the day.

THE COURT:  All right.

Well, I think that this is the appropriate way to
proceed.  If there are any complications, let me know right
away.  But I want to be able to give all parties a fair and
efficient way to quickly resolve this issue.  And so I would
anticipate that, you know, we will maintain the status quo,

C4b0sota

1   unless I get some further application, reason for changing

2   that.  And we'll if there are any other parties who have an

3   interest in this proceeding by June 5th.  And, as I say, the

4   government and Sotheby's should discuss what informal discovery

5   that you think would be helpful and appropriate to do in May,

6   and what further formal discovery will, particularly if it

7   involves depositions, that you might want to do in June once we

8   find out whoever the claimants are.  Obviously, if there are

9   other claimants, we'll get them involved in that process and

10  try to get them up to speed with regard to what has already

11  been exchanged, and have them participate in the depositions

12  that the parties believe is appropriate to do.

13          But assuming that the likely possibility is is that

14  the interested parties are here before the Court, now, and/or

15  are in direct communication with the parties who are the U.S.

16  government and Sotheby's that, hopefully, we can efficiently

17  move forward after the 20th to set this down for an appropriate

18  hearing for a resolution as to the government's forfeiture

19  application with regard to the property.

20          So I'll see all of the parties on the 20th at 10:30.

21  As I say, if there are any issues that arise before then, just

22  submit it to me by letter, I'll resolve them right away or I'll

23  bring you in if we need another conference.

24          All right?

25          MR. WILSON:  Thank you, your Honor.

C4b0sota

1              MS. LEVIN:   Thank you, your Honor.

2              MR. NEIMAN:   Thank you, your Honor.

3              (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25