# WILMERHALE

September 12, 2013

**Peter G. Neiman**

+1 212 295 6487 (t)
+1 212 230 8888 (f)
peter.neiman@wilmerhale.com

Hon. George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. A 10th Century Cambodian Sandstone Sculpture, Currently Located At Sotheby's In New York, New York*, No. 12 Civ. 2600 (GBD)

Dear Judge Daniels:

We write to correct a factual assertion in the Government's letter, submitted to the Court at 11:19 p.m. last evening (without prior notice to claimants). While there is no need for the Court to rule on the issue, we did not want to leave unrebutted in the public record the Government's assertion that Sotheby's provided "false and misleading information to the Government" regarding when and by whom the Statue was first seen in London. Any suggestion that Sotheby's provided information it knew to be inaccurate is demonstrably not true.

On March 22, 2011, two days before the scheduled auction of the Statue, and before the decision to postpone the auction was made, documents reflect that the Government's case agent asked Sotheby's whether it had "solid provenance" backing up the assertion in the auction catalogue that the piece was sold at Spink & Son in 1975, or whether he needed to contact Christie's, which the agent had been told might have acquired Spink's archives, to verify the sale. Dkt. 63-1. With little time available to clear up the issue prior to the auction, instead of urging the agent to look elsewhere, a Sotheby's employee voluntarily and promptly provided the agent with the invoice documenting the Statue's sale in 1975 in London, more than a decade *before* Cambodia passed its modern cultural property laws. *Id.* That, by itself, was dispositive of Cambodia's claim. Indeed, the documents submitted along with our motion for judgment on the pleadings and a stay of discovery show that the agent himself at that time was of the view that Cambodia's cultural property law dated to 1993, and agreed that unless Cambodia had a cultural property law declaring ownership before the piece was removed from Cambodia, he was, in his words, "unable to do anything." Dkt. 60-1; Dkt. 60-2.

The documents reflect that the Sotheby's employee further told the agent that Sotheby's research had uncovered that the piece had been seen "in London in the late 1960s." Dkt. 63-1. It is beyond dispute that this accurately reflected what Sotheby's knew at the time. As we previously explained when the Government made a similar (but more careful) assertion in the Amended Complaint that the provenance information provided was inaccurate, "documents produced to the government more than a year ago reflect that the Art Historian represented to Sotheby's, in writing, that she herself had 'first seen' the Statue at 'Spink and Son . . , in the late 1960's while visiting London." Dkt. 41, at p.2.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007
Beijing   Berlin   Boston   Brussels   Frankfurt   London   Los Angeles   New York   Oxford   Palo Alto   Waltham   Washington

WILMERHALE

Hon. George B. Daniels
September 12, 2012
Page 2

The Government apparently believes that the Art Historian's recollection of when she had seen the Statue in London was off by a few years, since, on the Government's theory, the Statue was still in Cambodia until the early 1970s. But whether or not that is so, the Government has never identified a basis, and there is none, to fault Sotheby's for the Art Historian's alleged lack of precision, or to suggest that Sotheby's somehow knew this recollection was mistaken.[1]

Nor is the discrepancy between the Art Historian's recollection and the Government's theory important. The colonial decrees the Government argues control here were issued between 1900 and 1925; the modern cultural property law was not issued until 1993. Cambodia's purported ownership of this Statue does not turn on whether the Statue was first seen in London in the early 1970s or instead the late 1960s.

Respectfully submitted,

Peter G. Neiman

cc: Counsel for the Plaintiff (by email)

---

[1] The Government also faults Sotheby's for not identifying by name those who had seen the Statue in London in the late 1960s, but the agent did not ask for names. Nor was it inaccurate to tell the Government that the witnesses "presently have no financial interest in the property." That representation was true. The Government alleges that the Dealer was the "original seller" of the piece in 1975, and that the Art Historian was a close associate of his. But neither of those things, if true, would give either a present "financial interest" in the Statue. Nor did Sotheby's know in March 2011 that the Dealer was the original seller or implicated in the Statue's removal from Cambodia; rather, documents show the Dealer flatly denied to Sotheby's, in writing, prior ownership of the Statue, which he claimed Spink had obtained "from a dealer in B[ang]k[o]k." Dkt. 41-3; Dkt. 41, at p.3.